Chief Judge JACOBS dissents by separate opinion.
WESLEY, Circuit Judge:
I.
Plaintiff-Appellant HOP Energy, L.L.C. (“HOP”) delivers fuel oil and provides heating services to homes and businesses in Massachusetts, Connecticut, Rhode Island, New Jersey, Pennsylvania, and Delaware through independent operating divisions. Prior to May 12, 2007, it serviced New York City customers through its Madison Oil (“Madison”) operating division. Madison was a “union shop” and had signed the Teamsters Local 553 2004-07 Master Collective Bargaining Agreement (the “2004-07 Master CBA”). On May 12, 2007, HOP sold 100% of Madison’s operating assets to Approved Oil Company (“Approved”), also a signatory to the 2004-07 Master CBA.
Teamsters Local 553 has a multi-employer pension fund under the Employee *160 Retirement Income Security Act (“ERISA”). The 2004-07 Master CBA based signatory contributions on the number of hours respective employees worked.
To effectuate Madison’s sale, HOP and Approved entered into an Asset Purchase Agreement (“APA”). The APA provided:
[Approved] shall make contributions to the Local 553 Pension Fund (the “Teamsters Fund”) for substantially the same number of contribution base units for which [HOP] had an obligation to contribute with respect to the operations covered by the Teamsters Fund. Notwithstanding the previous sentence and except as otherwise provided in Section 12.1, nothing in this Section shall impair or limit the Purchaser’s right to discharge, lay off, or hire employees or otherwise to manage the operations of the Business, including the right to amend, revise or terminate any collective bargaining agreement currently in effect and, as a consequence, reduce to any extent the number of contribution base units with respect to which [Approved] has an obligation to contribute to any plan.
(emphasis added).
Following the sale, HOP ceased operations in New York City and also ceased contributing to the Local 553 Pension Fund. The fund’s sponsor assessed HOP withdrawal liability for $1,204,007. HOP asked the fund to reconsider the assessment, claiming that the sale was exempt from withdrawal liability because the Madison sale satisfied 29 U.S.C. § 1384(a)(1) as a bona fide asset sale. The fund upheld its assessment, and HOP commenced an arbitration to challenge its liability.
Prior to the arbitration, HOP and Local 553 stipulated that the asset sale satisfied §§ 1384(a)(l)(B)(bond requirement) and 1384(a)(1)(C) (requirement that the seller remain secondarily liable for five years after the sale). Therefore, the only issue for the arbitrator was whether Approved had a post-sale obligation to contribute “substantially the same number of contribution base units” as HOP. 29 U.S.C. § 1384(a)(1)(A). The arbitrator concluded that the sale did not satisfy § 1384(a)(1)(A) because the APA specifically disclaimed the purported contribution obligation. The district court agreed; HOP timely appealed.
II.
We have yet to decide the standard of review for an arbitrator’s finding that a party does not qualify for an exemption from withdrawal liability under 29 U.S.C. § 1384(a)(1). Local 553 and amicus curiae Pension Benefit Guaranty Corporation[1] (“PBGC”) argue for “clear error” review, while HOP argues for de novo review. The question presented is inherently a question of law as it requires review of contract language juxtaposed to a statutory obligation. Other courts of appeals have found the proper standard of review to be de novo; we agree. See Bowers v. Andrew Weir Shipping, Ltd., 27 F.3d 800, 804-05 (2d Cir.1994) (cataloging other cases and presuming, but not deciding, that the standard of review was de novo).
*161 III.
To qualify for the sale of assets exemption from withdrawal liability, a purchaser must have substantially the same post-sale “obligation to contribute” to the pension fund as the seller had pre-sale. 29 U.S.C. § 1384(a)(1)(A). The MPPAA defines an “obligation to contribute” as one arising “(1) under one or more collective bargaining (or related) agreements, or (2) as a result of a duty under applicable labor-management relations law.” 29 U.S.C. § 1392(a). It defines a “contribution base unit” as “a unit with respect to which an employer has an obligation to contribute under a multiemployer plan.” 29 U.S.C. § 1301(a)(ll).
Before HOP sold Madison to Approved, it had a year-to-year ongoing ERISA obligation to maintain a threshold level of contribution base units. If HOP reduced its contribution base units by 70%, or partially ceased its contributions in a given year, it would have been subject to partial withdrawal liability. 29 U.S.C. § 1385. If it permanently went out of business or terminated Madison’s operations, it would have been subject to complete withdrawal liability. 29 U.S.C. § 1383. The MPPAA seeks to keep this pre-sale contribution obligation constant to maintain the financial stability of the fund; a sale of assets is only exempt from withdrawal liability if the purchaser assumes substantially the same “obligation to contribute” as the seller had pre-sale.[2]
Here, the “contribution base unit” was hours of employee pay. The 2004-07 Master CBA obligated HOP to contribute to the pension fund based on the hours of pay its Madison employees worked. See 29 U.S.C. §§ 1301(a)(ll), 1392(a). Thus, before the sale, HOP had a year-to-year ongoing ERISA obligation to maintain a threshold level of hours of employee pay. Therefore, for HOP to qualify for the sale of assets exemption, Approved had to assume substantially the same obligation: Approved had to have an obligation to contribute substantially the same hours of employee pay as HOP had contributed pre-sale.
HOP argues that Approved had the requisite contribution obligation because Approved simply “stepped into HOP’s shoes.” According to HOP, where HOP previously had contributed for a Madison employee’s “hour of pay,” Approved would now have an identical contribution obligation. The problem with HOP’s argument, however, is that it conflates two distinct terms: (1) contribution base units and (2) contribution base unit rates. HOP’s argument is that Approved had an obligation to contribute to the fund at the same rate. We agree that Approved had this obligation. But Approved had no obligation to maintain substantially the same number of “hours of pay.” Therefore, the sale did not qualify HOP for an exemption from withdrawal liability.
Other sections of the statute support our view that “contribution base unit” and “contribution base unit rate” are distinct. For instance, when a plan assesses withdrawal liability, it must calculate the annual withdrawal liability payment, which, in pertinent part, is the product of “the average annual number of contribution base units ” and the “highest contribution rate at which the employer had an obligation to contribute.” 29 U.S.C. § 1399(c)(l)(C)(i) (emphases added). In another section, and as mentioned earlier, the MPPAA ex *162 plains that an employer partially withdraws from a plan and is subject to partial withdrawal liability when its contributions decline by at least 70% measured by comparing the number of contribution base units from year-to-year. 29 U.S.C. § 1385(b). Under each of these sections, one looks at the “number of hours of pay” as the “contribution base unit.” “[W]e read statutes as a whole, with no section interpreted in isolation from the context of the whole Act.” United States v. Al Kassar, 660 F.3d 108, 124 (2d Cir.2011) (internal quotation marks omitted).
It is clear from the sale agreement that Approved had no “obligation to contribute” substantially the same number of hours of pay as HOP had contributed pre-sale. For one, the APA specifically disclaimed any such obligation. In addition, HOP offers no language in the 2004-07 Master CBA, any other collective bargaining agreement, or any applicable labor management relations law that obligated Approved to contribute substantially the same number of hours of pay as HOP had contributed pre-sale.[3] See 29 U.S.C. § 1392(a). As the arbitrator explained:
Nothing in the union-employer agreements in the record [those between Local 553 and Approved] require[d] Approved, in respect to the operations of HOP, which for all practical purposes was the same as Approved’s, to keep a certain number of employees, whether from Approved’s ranks or HOP’s, on the payroll to achieve a contribution base unit level that would remain substantially the same as HOP’s pre-sale.
We agree with the district court that Approved lacked an “obligation to contribute ... substantially the same number of contribution base units” to the pension fund as HOP had contributed pre-sale.
Finally, it makes no difference that Approved might actually have contributed to the plan based on substantially the same number of hours of pay as HOP had contributed pre-sale. Section 1384(a)(1)(A) focuses on the purchaser’s obligation at the time the sale closes and not what happens after the fact. Cent. States, Se. & Sw. Areas Health & Welfare Fund, 973 F.2d at 1338.
IV.
HOP next argues that the arbitrator erred by excluding extrinsic evidence about its intent when entering the APA. New York law governs the APA. Under New York law, a court must give full effect to unambiguous contract terms. See Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002). Extrinsic evidence cannot be used to vary the terms of a facially unambiguous contract. See Chi-mart Assocs. v. Paul, 66 N.Y.2d 570, 572, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986). With unambiguous contracts, a party’s subjective intent and understanding of the terms is irrelevant. Additionally, under the MPPAA, it is the arbitrator who determines whether a contract is ambiguous. Joseph Schlitz Brewing Co. v. Milwaukee Brewery Workers’ Pension Plan, 3 F.3d 994, 999 (7th Cir.1993). Here, the arbitrator found the contract unambiguous. This was not error.
V.
The dissent presses for reversal because, it asserts, the majority opinion *163 views the purchaser’s obligation to contribute as ongoing and, apparently, perpetual. Dissenting Op. at 164-65. But, as the dissent recognizes, the duration of the buyer’s obligation to contribute was neither raised by the parties nor decided by this majority opinion. The sole issue presented for review was whether, at the time of sale, Approved had substantially the same obligation to contribute as HOP. We think it clear Approved did not.
Our dissenting brother fears that our decision can be read to imply an “obligation to maintain historical contribution levels into the future.” Dissenting Op. at 166. We see no reason to decide an issue out of fear that some will misunderstand our efforts here when the parties never raised the issue.
Simply put, 29 U.S.C. § 1384(a)(1)(A) does not address the duration of the purchaser’s obligation to contribute. It asks only whether the purchaser had the same obligation to contribute as the seller at the time of sale. If the plain language of the statute impairs the ability of an employer to sell its business (we are not sure it does), as our dissenting brother fears, the problem lies with the statute and not this Court.
Judges are not statutory fix-it-folk. No one, including our dissenting brother, has argued that the statute imposes an absurd result. See Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring). While we do not dispute that the dissent raises an issue of concern, we do not feel called upon to address it.[4]
CONCLUSION
HOP has not demonstrated that Approved was obligated to contribute substantially the same number of “contribution base units” (hours of pay) as HOP had contributed pre-sale. The arbitrator did not err by excluding extrinsic evidence of the parties’ intent when entering the transaction because the APA was unambiguous. We therefore AFFIRM the district court’s judgment.
AFFIRMED.

. PBGC is the federal government agency responsible for administering and enforcing Title IV of ERISA, including the provisions added by the Multi-Employer Pension Plan Amendments Act (“MPPAA”). It often appears as amicus curiae in cases involving MPPAA issues and its views on such issues are entitled to deference. Beck v. PACE Int'l Union, 551 U.S. 96, 104, 127 S.Ct. 2310, 168 L.Ed.2d 1 (2007). On December 15, 2011, PBGC responded to our invitation to the United States government to provide its views on certain issues.

. The purpose of withdrawal liability "is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.” Park S. Hotel Corp. v. N.Y. Hotel Trades Council, 851 F.2d 578, 580 (2d Cir.1988).

. For instance, as part of the sale, Approved could have entered a stand alone collective bargaining agreement with Local 553 obligating it to ensure substantially the same number of hours of pay as HOP had provided pre-sale. See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Cullum Co., Inc., 973 F.2d 1333, 1338 (7th Cir.1992).

. It does strike us as odd that, notwithstanding the dissent's plausible concern that the statute affects the alienability of businesses that are subject to the type of retirement plans at issue here, there is a dearth of cases dealing with this issue.