**17-1211-cv**
**The National Retirement Fund, et al. v. Metz Culinary Management, Inc.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2017

Docket No. 17-1211-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE NATIONAL RETIREMENT FUND, EACH ON BEHALF OF THE LEGACY
PLAN OF THE NATIONAL RETIREMENT FUND, BOARD OF TRUSTEES OF
THE NATIONAL RETIREMENT FUND, EACH ON BEHALF OF THE LEGACY
PLAN OF THE NATIONAL RETIREMENT FUND,

Plaintiffs – Counter – Defendants – Appellees,

v.

METZ CULINARY MANAGEMENT, INC.,

Defendant – Counter – Claimant – Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARGUED:   February 8, 2018
DECIDED:  January 2, 2020

B e f o r e:   WINTER, LIVINGSTON, and CHIN, <u>Circuit Judges</u>.

Appeal from a judgment of the United States District Court for the Southern District of New York (Valerie Caproni, Judge), vacating an arbitration award. The award held that interest rate assumptions for purposes of withdrawal from a multiemployer pension plan liability are those in effect on the last day of the year preceding the employer's withdrawal. The district court held that interest rate assumptions may be determined after withdrawal and retroactively imposed. We disagree and vacate.

ROBERT LITVIN (Paisner Litvin LLP, on the brief), Bala Cynwyd, PA, for Defendant – Counter – Claimant – Appellant.

RONALD E. RICHMAN (Schulte Roth & Zabel LLP, on the brief), New York, New York, for Plaintiffs – Counter – Defendants – Appellees.

Robert R. Perry, Todd H. Girshon (Jackson Lewis P.C.), New York, New York, for Amicus Curiae Joseph Abboud Manufacturing Corp. and Waterford Hotel Group, Inc.

WINTER, Circuit Judge:

Metz Culinary Management, Inc., a contributing employer to the National Retirement Fund, appeals from Judge Caproni's decision vacating Arbitrator Ira

F. Jaffe's award. His award held that appellees improperly calculated appellant's withdrawal liability based on interest rate assumptions adopted in 2014 after appellant withdrew from the Plan. The district court held that Section 4213 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1393, does not require actuaries to calculate withdrawal liability based on interest rate assumptions used prior to an employer's withdrawal from a plan. The district court further held that interest rate assumptions must be affirmatively reached and may not roll over automatically from the preceding plan year. For reasons stated below, we vacate the district court's judgment.

BACKGROUND

Appellees are a trust fund, established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), and its Board of Trustees ("Trustees"). The Fund -- through its Trustees -- sponsors and administers the Legacy Plan of the National Retirement Fund (the "Plan"), a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

In multiemployer pension plans, several "employers pool contributions into a single fund that pays benefits to covered retirees who spent a certain

3

amount of time working for one or more of the contributing employers." Trs. of The Local 138 Pension Tr. Fund v. F.W. Honerkamp Co., 692 F.3d 127, 129 (2d Cir. 2012). Appellant was an employer contributing to the Plan until May 16, 2014 when it effectuated a complete withdrawal from the Plan. See Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

When a plan is underfunded, an employer seeking to withdraw must pay its share of unfunded vested benefits ("UVBs"). See 29 U.S.C. § 1381(b)(1). UVBs are "calculated as the difference between the present value of vested benefits and the current value of the plan's assets." Pension Benefit Guar. Corp. V. R.A. Gray & Co., 467 U.S. 717, 725 (1984) (citing 29 U.S.C. §§ 1381, 1391). The Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA") sets forth rules for calculating a withdrawing employer's share of a plan's underfunding. Pursuant to the MPPAA, "[i]f an employer withdraws from a multiemployer plan . . . the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a). "Withdrawal liability is the withdrawing employer's proportionate share of the pension plan's unfunded vested benefits." Honerkamp, 692 F.3d at 130.

Pursuant to Section 4211 of ERISA, a plan may select one of four identified allocation methods or develop its own method for calculating UVBs, subject to approval by the Pension Benefit Guaranty Corporation ("PBGC"). 29 U.S.C. § 1391. Critical to the present dispute, Section 1391 of the MPPAA directs plans to calculate the withdrawal charge, not as of the date of withdrawal or sometime later, but as of the last day of the plan year preceding the year during which the employer withdrew. This date could be up to a year earlier. Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co., 513 U.S. 414, 417-18 (1995) (citing §§ 1391(b)(2)(A)(ii), (b)(2)(E)(i), (c)(2)(C)(i), (c)(3)(A), and (c)(4)(A)). The last day of the plan year preceding the year during which the employer withdraws is referred to as the "Measurement Date." Because appellant withdrew from the Plan on May 16, 2014, the applicable Measurement Date is December 31, 2013.

Of the many actuary assumptions necessary to calculate withdrawal liability, only the interest rate assumption is at issue in this matter. To determine an employer's withdrawal liability, a plan's actuary must estimate the present value of the plan's vested benefits and the interest rate necessary to discount the liability for future benefit payments. See Combs v. Classic Coal Corp., 931 F.2d

5

96, 98 (D.C. Cir. 1991). Because the interest rate assumption governs the estimate of a plan's growth from investments apart from employers' future contributions, increasing the interest rate assumption decreases an employer's withdrawal liability, and vice versa. See id. ERISA Section 4213(a) requires withdrawal liability to be based on "reasonable" actuarial assumptions and methods, "taking into account the experience of the plan and reasonable expectations," and to be "the actuary's best estimate of anticipated experience under the plan." 29 U.S.C. § 1393(a)(1).

Buck Consultants ("Buck") served as appellees' actuary for many years. In October 2013, appellees replaced Buck with Horizon Actuarial Services, LLC beginning in 2014. For several years before its termination as the Plan's actuary, Buck utilized a 7.25% interest rate assumption to determine the Fund's UVBs. The Plan's 2013 Form 5500 Schedule MB,[1] states that a 7.25% interest rate assumption remained in place in 2013 for purposes of determining UVBs. At a 7.25% interest rate, appellant's withdrawal liability would have been $254,644.

---

[1] A Form 5500 is an annual report, filed with the United States Department of Labor, for an employee benefit plan. Schedule MB is the portion of the Form 5500 that provides actuarial information for a defined benefit pension fund and is completed by the fund's actuary.

In June 2014, however, Horizon informed the Trustees that the interest rate assumption for purposes of withdrawal liability was reduced from 7.25% to approximately 3.25%.[2] At a 3.25% interest rate, appellant's withdrawal liability was calculated to be $997,734. The Fund applied the revised interest rate to calculate appellant's withdrawal liability at the higher figure. Appellant then commenced the arbitration proceeding that led to this appeal.

The parties agreed that "a preliminary issue" relating to "the interest rate assumption used by the Fund to calculate [Metz's] withdrawal liability" would "be presented for ruling on the basis of written stipulations and briefing." App'x at 22-23.

On February 22, 2016, Arbitrator Jaffe issued an "Interim Award" holding that appellees' retroactive application of the PBGC rate to calculate appellant's withdrawal liability was improper. It stated:

> The Fund's assertion that the Fund Actuary had not made any interest rate assumption determination as of December 31, 2013, for

---

[2] The documents in the record reflecting this change relate only to withdrawal liability, and it appears that no change was made as to the assumed interest rate for other purposes. If so, the change increased the liability only for withdrawing employers while leaving the contributions of remaining employers unchanged. In view of our disposition of this matter and the lack of an explicit finding, this issue is not dispositive.

7

purposes of calculating the Fund's [UVBs] for withdrawal liability is rejected. MPPAA requires that the assumptions and methods in effect on December 31, 2013, be used for calculating the Employer's withdrawal liability. Absent some change by the Fund actuaries, the existing assumptions and methods remained in place as of December 31, 2013.

App'x at 37.

Accordingly, the Recalculation of Withdrawal Liability reduced appellant's withdrawal liability from $997,734 to $254,644.

On March 31, 2016, appellees brought the present action pursuant to Section 4221(b)(2) of ERISA, 29 U.S.C. § 1401(b)(2), seeking to modify and/or vacate the arbitrator's Final Award. On May 4, 2016, appellant filed a counterclaim, seeking enforcement of the Final Award. On March 27, 2017, the district court vacated the Final Award, holding that "ERISA does not require actuaries to make withdrawal liability assumptions by the measurement date." App'x at 283, 289-90. According to the district court, "the withdrawal liability interest rate assumption in effect on the Measurement Date is not applicable to the upcoming plan year unless the actuary affirmatively determines that the assumption . . . is reasonable and her best estimate of anticipated experience

under the plan as of the Measurement Date."  App'x at 279 (emphasis in original).

On April 25, 2017, appellant timely appealed.

## DISCUSSION

We review an arbitrator's legal conclusions made under Section 4221 of ERISA de novo.  See HOP Energy, L.L.C. v. Local 553 Pension Fund, 678 F.3d 158, 160 (2d Cir. 2012).  By contrast, factual findings made by an arbitrator enjoy a "presumption of correctness."  See ERISA Section 4221(c), 29 U.S.C. § 1401(c) ("[T]here shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct."); Sigmund Cohn Corp. v. Dist. No. 15 Machinists Pension Fund, 804 F. Supp. 490, 493 (E.D.N.Y. 1992) ("Courts reviewing arbitration awards have consistently upheld the arbitrator's factual findings under section 4221(c)'s 'presumption of correctness.'").

The parties use copious amounts of ink in argument over what are the arbitrator's legal interpretations of the MPPAA and what are his factual findings. Much of this argumentation is irrelevant because the legal argument is decisive on the undisputed facts.  That issue is whether, under the MPPAA, a fund may

9

select an interest rate assumption after the Measurement Date and retroactively apply that assumption to withdrawal liability calculations. Appellant's withdrawal from the Plan on May 16, 2014 caused December 31, 2013 to be the Measurement Date. As a factual matter, it is not seriously contested that the interest assumption as of that date was 7.25%. Appellees selected the revised rate no earlier than June 2014, claiming that rate to be proper for the earlier Measurement Date.

As the arbitrator's award states, "there is no dispute that Horizon did not adopt the PBGC rates as the interest rate assumption for withdrawal liability purposes until some time in 2014," after the Measurement Date of December 31, 2013. App'x at 37. The arbitrator stated that the Fund's "decision to apply [a] changed assumption [rate] retroactively so as to increase the withdrawal liability assessed to [Metz] and other employers who withdrew from the Fund after December 31, 2013, was violative of MPPAA." App'x at 37. While the statement of the Fund's action is an undisputed factual finding, the legal conclusion is subject to <u>de novo</u> review.

ERISA and Congress's guidelines for calculating an employer's withdrawal liability, <u>see</u> Section 4213 of ERISA, 29 U.S.C. § 1393, are silent as to whether

10

interest rate assumptions on the Measurement Date must be affirmatively adopted, or whether, absent an actuary's affirmative selection of a new assumption rate, the rate in effect during the previous plan year rolls over automatically. Although the district court held that "Section 4213 does not allow stale assumptions from the preceding plan year to roll over automatically," App'x at 278, there is no statutory or caselaw support for that proposition, and we do not agree with it. In the context of multiemployer pension plans, interest rate assumptions cannot be altered daily and must have a degree of stability. Nor, in that context, do interest rate assumptions remain open forever and subject to retroactive changes in later years. Indeed, the Plan itself used the 7.25% rate for several years and its annual reports to the government reflect the ongoing rollover.

Moreover, Section 4214 imposes a notice requirement on multiemployer funds for any plan rule or amendment with respect to withdrawal liability. The legislative history demonstrates that it was designed to protect employers from the retroactive application of rules relating to the calculation of withdrawal liability:

> There are several situations where plans, in the application of

11

their own rules, either initially or by amendment, are permitted a wide degree of latitude in allocating and calculating withdrawal liability. In order to protect an employer from certain retroactive changes in a plan's rules, the bill [H.R. 3904] prohibits the retroactive application of a plan rule or amendment relating to withdrawal liability from applying to a withdrawal occurring before its date of adoption, unless the employer consents to its earlier application.

The bill also requires that plan rules and amendments operate and be applied uniformly with respect to all employers except to the extent that lack of uniformity would be required to take into account employers' credit ratings.

Under the bill, when a plan rule or amendment affects withdrawal liability, the plan sponsor is required to give notice of the adoption of the rule or amendment to all employers required to contribute to the plan and to all employee organizations representing employees covered by the plan.

H.R. Rep. No. 96-869, pt. 2 at 30.

Although Section 4214 does not define "plan rules and amendments" and

Section 4213 –- unlike Section 4214 –- does not specifically address retroactivity,

the retroactive selection of interest rate assumptions for purposes of withdrawal

liability, as endorsed by the district court, is, therefore, inconsistent with

Congress's legislative intent.  Moreover, certain provisions of ERISA allow

employers to request and receive notice of their estimated withdrawal liability

prior to actually withdrawing from a fund.  For example, Section 101 provides

12

that "[t]he plan sponsor or administrator of a multiemployer plan shall, upon written request, furnish to any employer who has an obligation to contribute to the plan," a "[n]otice of potential withdrawal liability." 29 U.S.C. § 1021(l)(1). The plan administrator is also required to provide:

> (A) the estimated amount which would be the amount of such employer's withdrawal liability under part 1 of subtitle E of subchapter III if such employer withdrew on the last day of the plan year preceding the date of the request, and
>
> (B) an explanation of how such estimated liability amount was determined, including the actuarial assumptions and methods used to determine the value of the plan liabilities and assets, the data regarding employer contributions, unfunded vested benefits, annual changes in the plan's unfunded vested benefits, and the application of any relevant limitations on the estimated withdrawal liability.

29 U.S.C. § 1021(l)(1)(A), (B). Such provisions are of no value if retroactive changes in interest rates assumptions may be made at any time.

In considering the retroactive selection of interest rate assumptions, we conclude that the assumptions and methods used to calculate the interest rate assumption for purposes of withdrawal liability must be those in effect as of the Measurement Date.[3] Absent a change by a Fund's actuary before the

---

[3] We are mindful of the district court's conviction that "[t]he Arbitrator incorrectly conflated" the terms "as of" and "in effect." App'x at 279. According to that court, "the withdrawal liability interest rate assumption <u>in effect</u> on the

Measurement Date, the existing assumptions and methods remain in effect. Were it otherwise, the selection of an interest rate assumption after the Measurement Date would create significant opportunity for manipulation and bias. Nothing would prevent trustees from attempting to pressure actuaries to assess greater withdrawal liability on recently withdrawn employers than would have been the case if the prior assumptions and methods actually in place on the Measurement Date were used. Actuaries unwilling to yield to trustees' preferred interest rate assumptions can be replaced by others less reticent.

In Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Tr., 508 U.S. 602, 632 (1993), the Supreme Court acknowledged that the actuary in that case was "not, like the trustees, vulnerable to suggestions of bias or its appearance" because "actuaries are trained professionals subject to regulatory standards." The Court warned, however, that

> [u]sing different assumptions [for different purposes] could very well be attacked as presumptively unreasonable both in arbitration and on judicial review. . . .

Measurement Date is not applicable to the upcoming plan year unless the actuary affirmatively determines that the assumption . . . is reasonable and her best estimate of anticipated experience under the plan as of the Measurement Date." App'x at 279 (emphasis in original). For the reasons stated in this opinion, however, we believe the district court's reasoning to be unpersuasive.

14

[This] view that the trustees are required to act in a reasonably consistent manner greatly limits their discretion, because the use of assumptions overly favorable to the fund in one context will tend to have offsetting unfavorable consequences in other contexts. For example, the use of assumptions (such as low interest rates) that would tend to increase the fund's unfunded vested liability for withdrawal liability purposes would also make it more difficult for the plan to meet the minimum funding requirements of § 1082.

Id. at 633 (second and third alterations in original) (quoting United Retail & Wholesale Emps. Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc., 787 F.2d 128, 146-47 (3d Cir. 1986) (Seitz, J., dissenting in part)).

The opportunity for manipulation and bias is particularly great where funds use different interest rate assumptions for withdrawal liability and minimum funding purposes. Indeed, Arbitrator Jaffe specifically acknowledged that "[t]his potential for bias to operate is particularly great if the changed assumptions and methods relate only to those used to calculate the [UVBs] of the fund for purposes of withdrawal liability and not for funding or other purposes (as appears to have been the case in this matter)." App'x at 39-40 (emphasis added); see Concrete Pipe, 508 U.S. at 633 n.19 ("we are aware of at least one case in which a plan sponsor exercised decisive influence over an actuary whose initial assumptions it disliked") (citing Huber v. Casablanca Indus., Inc., 916 F.2d

15

85, 93 (3d Cir. 1990)).  This appeal, therefore, illustrates the type of results that can be "attacked as presumptively unreasonable both in arbitration and on judicial review" of which <u>Concrete Pipe</u> warns.  <u>Concrete Pipe</u>, 508 U.S. at 633.

CONCLUSION

We hold that interest rate assumptions for withdrawal liability purposes must be determined as of the last day of the year preceding the employer's withdrawal from a multiemployer pension plan.  Absent any change to the previous plan year's assumption made by the Measurement Date, the interest rate assumption in place from the previous plan year will roll over automatically.

The judgment of the district court is vacated, and the case is remanded with directions to enter judgment for the appellant and to remand any remaining issues to Arbitrator Jaffe.

16