# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 11, 2023      Decided February 9, 2024

No. 22-7157

TRUSTEES OF THE IAM NATIONAL PENSION FUND,
APPELLEE

v.

M & K EMPLOYEE SOLUTIONS, LLC,
APPELLANT

Consolidated with No. 22-7158

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02152)

*Michael E. Kenneally* and *Donald J. Vogel* argued the causes for appellant/cross-appellee. With them on the briefs was *R. Jay Taylor Jr. James A. Eckhart* entered an appearance.

*John E. Roberts* argued the cause for appellee/cross-appellant. With him on the brief were *Lucas Kowalczyk* and *Neil V. Shah*.

*Michael J. Prame* was on the brief for *amici curiae* The Segal Group, Inc., et al. in support of appellee.

No. 23-7028

Trustees of the IAM National Pension Fund,
Appellee

v.

Ohio Magnetics, Inc., et al.,
Appellants

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00928)

*Michael E. Kenneally* and *Donald J. Vogel* argued the causes for appellants. With them on the briefs were *Jonathan D. Janow*, *William P. Lewis*, *Stephen K. Dixon*, *Randall C. McGeorge*, and *Deborah S. Davidson*.

*John E. Roberts* argued the cause for appellee. With him on the brief were *Neil V. Shah* and *Lucas Kowalczyk*.

Before: Rao, Walker and Childs, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Childs.

Childs, *Circuit Judge*:

The Multiemployer Pension Plan Amendments Act ("MPPAA"), part of the Employee Retirement Income Security Act of 1974's ("ERISA") legal framework, requires an employer to pay "withdrawal liability" if it leaves a multiemployer pension plan ("MPP") under certain conditions. 29 U.S.C. §§ 1381, 1391; *United Mine Workers of Am. 1974*

*Pension Plan v. Energy W. Mining Co.*, 39 F.4th 730, 733 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 1024 (2023). As the name suggests, in an MPP, multiple employers make financial contributions to the same trust fund for the purpose of providing employee pensions. *See* 29 U.S.C. § 1002. Withdrawal liability for employers withdrawing from underfunded MPPs is the amount of money the employer owes the plan. Calculating withdrawal liability requires an actuary to project the plan's future payments to pensioners. Germane to any financial projection, "this requires making assumptions about the future." *Energy W.*, 39 F.4th at 734. The MPPAA requires the actuary to use "assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan." 29 U.S.C. § 1393(a)(1).

M&K Employee Solutions, LLC – Alsip ("Alsip"), M&K Employee Solutions, LLC – Joliet ("Joliet"), and M&K Employee Solutions, LLC – Summit ("Summit") (collectively "M&K") and Ohio Magnetics, Inc. ("Ohio") were formerly contributing employers to the IAM National Pension Fund ("the Fund") and all withdrew during the 2018 plan year. The Fund assessed withdrawal liability for each entity based on actuarial assumptions by Cheiron, Inc. ("Cheiron"), an actuarial consulting firm. Trustees for the Fund filed separate suits against M&K and Ohio challenging arbitration awards in favor of both employers' withdrawal liability, as calculated by Cheiron. In both instances, the district court vacated the awards and remanded the case to the arbitrator for further proceedings consistent with the district court's findings. The Fund appealed.

Because these cases involve the same Fund, are based on a similar set of facts, and require this Court to address the same legal question, we write a single opinion to address both cases.

The issue before us is whether an actuary may set actuarial assumptions for a given measurement date after the measurement date based on information that was available "as of" the measurement date.[1] We answer affirmatively and affirm both rulings of the district court.

## I. BACKGROUND

The district court has provided an extensive explanation of the complicated litigation and background of the relationship between M&K, Ohio, and the Fund, as well as the circumstances underlying the employers' withdrawals.[2] *See Trs. of IAM Nat'l Pension Fund v. Ohio Magnetics, Inc.*, 656 F. Supp. 3d 112, 117–22 (D.D.C. 2023); *Trs. of IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*, No. 1:21-CV-02152-RCL, 2022 WL 4534998, at *1–6 (D.D.C. Sept. 28, 2022). Additionally, this Court recently discussed ERISA, the MPPAA, and the process of calculating withdrawal liability using actuarial assumptions. *See Energy W.*, 39 F.4th at 734–38. Therefore, we present a truncated review of the overall framework, followed by the background of the cases at hand.

Congress passed ERISA, 29 U.S.C. §§ 1001–1461, "[t]o ensure that employees who were promised a pension would

---

[1] The measurement date is the last day of the plan year preceding the year during which the employer withdraws.

[2] *Trs. of IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*, No. 20-cv-433 (RCL), 2021 WL 1546947 (D.D.C. Apr. 20, 2021) ("*IAM PI I*"); *Trs. of IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*, No. 20-cv-433 (RCL), 2021 WL 2291966 (D.D.C. June 4, 2021) ("*IAM PI II*"), *appeal dismissed,* No. 21-7072, 2022 WL 2389289 (D.C. Cir. Jan. 19, 2022); *Trs. of IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*, No. 20-cv-433 (RCL), 2022 WL 594539 (D.D.C. Feb. 28, 2022) ("*IAM PI III*").

actually receive it." *Energy W.*, 39 F.4th at 734. An MPP is "maintained pursuant to a collective bargaining agreement between multiple employers and a union." *Id.*; 29 U.S.C. § 1002(37)(A) (defining MPPs). Unlike single-employer pension plans, operated for the benefit of a single employer, MPPs are designed to serve many different employers. These employers operate "mostly in industries where there are hundreds or thousands of small employers going in and out of business and where the nexus of the employment relationship is the union that represents employees who typically work for many of those employers over the course of their career." *Energy W.*, 39 F.4th at 734 n.1. Like single-employer plans, MPPs must "meet minimum funding standards, which require employers to contribute annually to the plan whatever is needed to ensure it has enough assets to pay for the employees' vested pension benefits when they retire." *Id.* at 734; *see Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416 (1995). As initially enacted, ERISA served its purpose if a multiemployer plan was financially stable; however, if a plan became financially unstable, participants would be required to make large contributions to meet minimum funding standards. *Energy W.*, 39 F.4th at 734. This incentivized employers to withdraw to escape liability, "precipitating a death spiral for the plan." *Id.* (*citing Milwaukee Brewery*, 513 U.S. at 416–17).

Congress amended ERISA in 1980 to address these issues with the passage of the MPPAA, codified at 29 U.S.C. §§ 1381–1461. Now, if an employer withdraws from an underfunded plan, the plan and its remaining employer contributors remain obligated to provide the vested benefits of all participants. To this end, the withdrawing contributor is assessed a withdrawal liability equal to its proportional share of unfunded pension benefits. The pension plan is responsible for initially determining an employer's withdrawal liability, as calculated by the plan's actuary. *Id.* § 1382(1). An actuary

must calculate withdrawal liability using assumptions "which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan." 29 U.S.C. § 1393(a)(1).

ERISA and the MPPAA provide a process to adjudicate disputes over withdrawal liability. If an employer wants to contest the plan's determination, it must first do so through arbitration. *Id.* § 1401(a)(1). In those and all subsequent proceedings, a plan's determination of unfunded vested benefits ("UVBs") "is presumed correct unless a party contesting the determination shows by a preponderance of evidence that" either "(i) the actuarial assumptions and methods used in the determination were, in the aggregate, unreasonable (taking into account the experience of the plan and reasonable expectations), or (ii) the plan's actuary made a significant error in applying the actuarial assumptions or methods." *Id.* § 1401(a)(3)(B). Following arbitration, any party may seek "to enforce, vacate, or modify the arbitrator's award" in the district court. *Id.* § 1401(b)(2). The court must apply a "presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." *Id.* § 1401(c).

## A. The Fund

The Fund at hand is an MPP that provides retirement benefits to employees of employers who maintain collective bargaining agreements with the International Association of Machinists and Aerospace Workers, AFL-CIO (or with affiliated local and district lodges). *Ohio Magnetics, Inc.*, 656 F. Supp. 3d at 119. The Fund, governed by a trust agreement, holds the plan's assets. J.A. 19. The trust agreement provides that the Fund's fiscal and ERISA plan year correspond to the calendar year, and that withdrawal liability shall be calculated

using the methodology set forth in 29 U.S.C. § 1393(b).[3]  J.A. 20.

## B.  Plan Evaluation

In November 2017, Cheiron, the Fund's actuary, valued the Fund's 2016 Plan Year UVBs at $448,099,164.  J.A. 21. To reach this result, it used a discount rate of 7.5%.  J.A. 21.

On January 24, 2018, Cheiron met with the Fund's Board of Trustees to review assumptions and methods used in making actuarial valuation calculations.[4]  After that meeting, Cheiron changed various methods and assumptions used to calculate withdrawal liability for employers withdrawing from the Fund during the 2018 Plan Year.  J.A. 117–118.  Cheiron selected a discount rate[5] assumption of 6.5%, a decrease from the

---

[3]    29 U.S.C. § 1393(b) states: "Factors determinative of unfunded vested benefits of plan for computing withdrawal liability of employer[:]  In determining the unfunded vested benefits of a plan for purposes of determining an employer's withdrawal liability under this part, the plan actuary may—(1) rely on the most recent complete actuarial valuation used for purposes of section 412 of Title 26 and reasonable estimates for the interim years of the unfunded vested benefits, and (2) in the absence of complete data, rely on the data available or on data secured by a sampling which can reasonably be expected to be representative of the status of the entire plan."

[4]    The parties disagree as to what happened at this meeting and the impact it had on the assumptions, but such considerations are not before this Court.  We need not speculate as there has not been proper fact development.

[5]    Pertinent to this appeal, an actuary must also assume the rate used to calculate the present value of the plan's liabilities for future benefit payments, which is known as the discount rate.  In other words, the discount rate is the rate at which the plan's assets will earn interest.   The discount rate assumptions influence the plan's calculation of its UVBs because UVBs are the difference between

previous 7.5% discount rate from the 2016 Plan Year valuation, and an administrative expense load of 4%. J.A. 118, 144. Additionally, it changed the method used to value the Plan's assets. J.A. 118.

As the district court noted, Cheiron did not include any assumption for the Fund's future administrative expenses, which are paid out of the Fund's assets and therefore contribute to the Plan's UVBs. *Ohio Magnetics, Inc.*, 656 F. Supp. 3d at 119. The 2018 decrease in the discount rate would result in greater withdrawal liability for employers. *Id.* at 120.

### C. M&K

For purposes of ERISA, M&K was considered a single employer from October 1, 2012, through December 31, 2018. *M & K Emp. Sols., LLC*, 2022 WL 4534998, at *3; *see also* J.A. 459. The relevant plan year for M&K ran from January 1 through December 31. J.A 116. M&K had partially withdrawn on March 31, 2017 (Joliet), and July 31, 2017 (Summit), and the Fund had therefore issued a partial withdrawal assessment based on the withdrawals (using a December 2016 measurement date). J.A. 24–25.

As discussed, Cheiron selected its new actuarial assumptions in January 2018, and thereafter, M&K completely withdrew during the 2018 plan year. J.A. 21–22. In April 2018, Cheiron calculated the Fund's UVBs for the 2017 plan year using those assumptions. J.A. 458–59. The Fund subsequently eliminated the 2017 partial assessment and merged the Joilet and Summit withdrawals into a complete

---

the present value of vested benefits and the current value of the plan's assets. When the discount rate assumption is revised downward, the value of the UVBs increases, along with withdrawal liability for departing employers, and vice versa.

2018 withdrawal liability assessment of $6,158,482. J.A. 24-25.

M&K commenced arbitration challenging the Fund's assessment of its withdrawal liability. At arbitration, the issues for resolution included: (1) whether it was a violation of ERISA, as amended, for the discount rate to be changed after the December 31, 2017, measurement date and (2) whether the "free-look" exception,[6] 29 U.S.C. § 1390(a), applies to M&K and consequently requires a recalculation of its withdrawal liability, *M & K Emp. Sols., LLC*, 2022 WL 4534998, at *4. The arbitrator issued an award on July 13, 2021, concluding that the Fund erred in its calculations by utilizing the January 2018 assumptions and methods instead of those in effect on December 31, 2017, and denying M&K's bid to invoke the free-look exception for the withdrawal of Joliet and Summit. *Id.* Both parties filed motions for reconsideration, which the arbitrator denied. *Id.*

The Fund filed two lawsuits against M&K, but only one is relevant to this appeal.[7] The Fund sought to confirm in part

---

[6] The free-look exception allows an employer to withdraw from a plan within a specified period after joining without incurring withdrawal liability, thereby providing a "free look." *See* 29 U.S.C. § 1390(a).

[7] In one of the suits not before this Court, the Fund brought a suit against M&K and other related Defendants to enjoin them from paying the assessed withdrawal liability. *Trs. of IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*, No. 1:20-CV-433 (RCL), 2022 WL 594539, at *1 (D.D.C. Feb. 28, 2022), *reconsideration denied sub nom. Trs. of IAM Nat'l Pension Fund v. M & K Emp. Sols., LLC*, No. 1:20-CV-433-RCL, 2023 WL 6065013 (D.D.C. Sept. 18, 2023). As the district court noted, under the MPPAA, employers "pay now, dispute later," means that they still have a duty to pay the calculated withdrawal liability even as they challenge the underlying

and vacate in part the arbitrator's award.[8] The district court held that 29 U.S.C. §§ 1391, 1393(a)(1) are best "read to allow later adoption of actuarial assumptions, so long as those assumptions are 'as of' the measurement date—that is, the assumptions must be based on the body of knowledge available up to the measurement date." *M & K Emp. Sols., LLC*, 2022 WL 4534998, at *19. Moreover, the district court held that M&K was entitled to the free-look exception because "it had (1) a 'complete or partial withdrawal' and (2) 'an obligation to contribute to the plan for no more than' five years." *Id.* at 20 (*citing* 29 U.S.C. § 1390(a)). The Fund appealed and M&K cross-appealed. J.A. 557.

### D. Ohio

Ohio was a party to a collective bargaining agreement requiring it to contribute to the Fund.[9] J.A. 119. Ohio

---

calculations. *Id.* This rule is meant to protect the solvency of an MPP during a potentially lengthy arbitration. *Id.* That case's complicated procedural history, and this Court's several injunctions, are distinct from the present dispute.

[8] The Fund asked the district court to vacate the portion of the award requiring it to assess withdrawal liability based on the methods and assumptions in effect on December 31, 2017, and affirm the portion rejecting M&K's bid to use the free-look exception. *See M & K Emp. Sols., LLC*, 2022 WL 4534998, at *5.

[9] This dispute also involved two other companies, Toyota Logistics Services, Inc. ("Toyota"), and Phillips Liquidating Trust ("Phillips"), which both withdrew from the Fund and were assessed withdrawal liability using the actuarial assumptions from the January 2018 Trustees meeting. Each company initiated its own arbitration proceedings, and each was similarly decided. In addition to filing a lawsuit against Ohio, the Fund also initiated suits against Toyota and Phillips seeking to vacate the arbitration award. All of the parties counterclaimed, and the suits were consolidated. *See Ohio Magnetics, Inc.*, 656 F. Supp. 3d at 116, 120–22.

withdrew from the Fund as of June 30, 2018. J.A. 120. As with M&K, the Fund's plan year runs from January 1 to December 31. J.A. 116. The Fund assessed Ohio with $447,475 in withdrawal liability using the assumptions adopted in the January 24, 2018, meeting and contained in the 2017 Plan Year valuation: a 6.5% withdrawal liability discount rate and a 3.5% expense load. *Ohio Magnetics, Inc.*, 656 F. Supp. 3d at 120. The Fund later denied Ohio's request to review its withdrawal liability assessment. *Id.* at 121. Ohio then initiated arbitration to decide when an actuary's assumptions must be adopted. *Id.* The crux of the issue before the arbitrator was whether it is "permissible for the Fund to assess withdrawal liability for the Companies, which withdrew in 2018, based on actuarial assumptions adopted in January 2018, or was Cheiron required as a matter of law to use assumptions that had been adopted prior to December 31, 2017?" *Id.* The arbitrator, relying on *National Retirement Fund on Behalf of Legacy Plan of National Retirement Fund v. Metz Culinary Management, Inc.*, 946 F.3d 146 (2d Cir. 2020), concluded that Cheiron erred in basing its withdrawal liability calculations on assumptions adopted after December 31, 2017. *Ohio Magnetics, Inc.*, 656 F. Supp. 3d at 121. The Fund appealed, and Ohio counterclaimed to enforce the arbitration award. *Id.* at 122. The district court held that an actuary could set employer withdrawal liability assumptions after the year-end measurement date, but only based on information available as of that date. *Id.* at 136–37. In doing so, the district court granted the Fund's motion, vacated the arbitration award, and remanded the issue to the arbitrator.

## II.  ANALYSIS
### A.  Standard of Review

This Court reviews "the district court's grant of summary judgment de novo, which means, in essence, we are reviewing the arbitrator's decision." *Energy W.*, 39 F.4th at 737. We

presume the arbitrator's findings of fact are correct unless rebutted "by a clear preponderance of the evidence." 29 U.S.C. § 1401(c). We review the arbitrator's legal determinations de novo. *Energy W.*, 39 F.4th at 737 (citing *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton TRI Indus.*, 727 F.2d 1204, 1207 n.7 (D.C. Cir. 1984)).

## B. Actuarial Assumptions

The district courts correctly found that the arbitrator erred in concluding that an actuary must use "the assumptions and methods in effect" on the relevant measurement date when calculating withdrawal liability.

An employer withdrawing from an MPP will be assessed withdrawal liability equal to its proportionate share of the plan's UVBs, i.e., the present value of its liabilities minus the current value of its assets. *See* 29 U.S.C. § 1391(b). The employer's withdrawal liability is calculated based on the plan's UVBs "as of" the measurement date. *See id.* § 1391(b)(2)(E)(i) ("An employer's proportional share of the unamortized amount of a change in unfunded vested benefits is the product of … the unamortized amount of such change (as of the end of the plan year preceding the plan year in which the employer withdraws); multiplied by [the fraction of that amount attributable to the employer.]").

When adopting actuarial assumptions, an actuary may base their assumption on information after the measurement date "so long as those assumptions are 'as of' the measurement date — that is, the assumptions must be based on the body of knowledge available up to the measurement date." *M & K Emp. Sols.*, 2022 WL 4534998, at *19. As the district court noted, this rule "best complies with Congress' dual directives that unfunded vested benefits be determined 'as of' the measurement date and that actuarial assumptions be generated

by 'taking into account the experience of the plan and reasonable expectations' such that they 'offer the actuary's best estimate of anticipated experience.'" *M & K Emp. Sols.*, 2022 WL 4534998, at *19 (quoting 29 U.S.C. §§ 1391, 1393(a)(1)). This aligns the calculation of the plan's experience, reasonable expectations, and the best estimate of anticipated experience "as of" the measurement date, rather than the date of the calculation. It would be contrary to 29 U.S.C. § 1393(a)(1)'s requirement that an actuary use its "best estimate" of the plan's anticipated experience as of the measurement date to require an actuary to determine what assumptions to use before the close of business on the measurement date. *See* 29 U.S.C. § 1393(a)(1). As Judge Lamberth recognized in *M & K Employee Solutions*, the value of UVBs "as of" the measurement date constitutes a snapshot of the information available "as of" that date. 2022 WL 4534998, at *15. Moreover, § 1393(a)(1) directs plan actuaries to use assumptions that "are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan…." 29 U.S.C. § 1393(a)(1).

The arbitrator, Ohio, and M&K place considerable weight on the Second Circuit's decision in *Metz*. As the district court correctly concluded, *Metz* is "neither controlling in this jurisdiction nor persuasive." *Ohio Magnetics, Inc.*, 656 F. Supp. 3d at 131; *see also M & K Emp. Sols.*, 2022 WL 4534998, at *17. We need not rehash what the district court correctly analyzed, but the main point is that *Metz*'s reasoning is counter to the text of the MPPAA, which protects MPPs and their beneficiaries. *See* 29 U.S.C. § 1001a(c) ("It is hereby declared to be the policy of this Act … to alleviate certain problems which tend to discourage the maintenance and growth of [MPPs], … to provide reasonable protection for the interests of participants and beneficiaries of financially distressed [MPPs], and … to provide a financially self-

sufficient program for the guarantee of employee benefits under [MPPs].").  Moreover, the parallels that *Metz* draws between 29 U.S.C. § 1393 and § 1394[10] are attenuated given that § 1394 does not discuss actuarial assumptions, and § 1393, the actual provision concerning actuarial assumptions, contains no such limitations.  *M & K Emp. Sols.*, 2022 WL 4534998, at *18 ("The presence of an anti-retroactivity provision in the section dealing with plan rules and amendments, and the absence of one in the section dealing with actuarial assumptions, suggests that anti-retroactivity was purposefully omitted in the latter.").  "In sum, the MPPAA's text reflects a balance struck by Congress between the competing considerations of actuarial flexibility and fairness to employers, and it is not for this Court to rewrite that legislative balance."  *Ohio Magnetics, Inc.*, 656 F. Supp. 3d at 135.

## C.  Free-Look Exception

Specific to M&K, the district court correctly concluded that the arbitrator erred as a matter of law in determining that M&K was not entitled to the free-look exception.  If a plan elects to allow a free-look exception, an employer may contribute to a plan for an initial specified period and then subsequently withdraw without incurring liability.  *See* 29 U.S.C. § 1390.  Specifically, among other statutory requirements that the parties agree are satisfied here, "[a]n employer … is not liable to the plan" if the employer (1) "withdraws from a plan in complete or partial withdrawal" and (2) "had an obligation to contribute to the plan for no more than … the number of years required for vesting under the plan." *See id.* § 1390(a); *M & K Emp. Sols., LLC*, 2022 WL 4534998, at *20.  The Fund elected to allow the free-look exception and

---

[10]   29 U.S.C. § 1394 expressly limits retroactivity for changes to plan rules and amendments.

set the specified period to vest at five years. *M & K Emp. Sols., LLC*, 2022 WL 4534998, at \*20.

As discussed, Cheiron selected its new actuarial assumptions in January 2018, and thereafter, M&K completely withdrew during the 2018 plan year. J.A. 21–22. In April 2018, Cheiron calculated the Fund's UVBs for the 2017 plan year using those assumptions. J.A. 458–59. The Fund subsequently eliminated the 2017 partial assessment and merged the Joliet and Summit withdrawals into a complete 2018 withdrawal liability assessment of $6,158,482. J.A. 24–25.

M&K partially withdrew in March 2017 and July 2017. *Id.* Joliet ended its obligation to the Fund in March when its representation was decertified. *Id.* Moreover, Summit ceased its obligation in July when it negotiated a new collective bargaining agreement. *Id.* These actions triggered M&K's partial withdrawal during the 2017 plan year. *See* 29 U.S.C. § 1390(a)(2), (b)(2).[11] The parties previously agreed that M&K had an obligation of fewer than five years at the time that Joliet and Summit withdrew from the Fund.[12] *See M & K Emp.*

---

[11] The district court also noted that the arbitrator concluded that M&K had a "partial withdrawal by its Joliet and Summit facilities." *M & K Emp. Sols., LLC*, 2022 WL 4534998, at \*20 (citation omitted).

[12] The arbitrator came to the contrary conclusion, relying on *South City Motors, Inc. v. Automotive Industries Pension Trust Fund*, No. 17-cv-04475, 2018 WL 2387854 (N.D. Cal. May 25, 2018), *aff'd* 796 F. App'x 393 (9th Cir. 2020). It is neither binding in our Circuit nor persuasive considering this specific set of facts. *See M & K Emp. Sols., LLC*, 2022 WL 4534998, at \*21 ("And, unlike the single employer in *South City Motors*, the single employer M&K *did* meet the requirements to invoke a 'free look' at the time of its partial withdrawal. M&K had a partial withdrawal, with an obligation to

*Sols., LLC*, 2022 WL 4534998, at \*20.  Thus, M&K's partial withdrawal met the free-look exception requirements.

*****

For the reasons set forth above, we affirm the judgments of the district court.

*So ordered.*

---

IAM of no more than five years, and therefore the Arbitrator erred by denying it the exception.").  This case is unlike *South City Motors*, where the single employer did not meet the requirements to invoke a "free look" at the time of its partial withdrawal.  *See S. City Motors*, 796 F. App'x at 395–96.