**CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, Plaintiff–Appellant,**

v.

**UNDERGROUND CONSTRUCTION COMPANY, INC., Defendant–Appellee.**

No. 92–15649.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1993.

Decided July 22, 1994.

Robert M. Hirsch, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, CA, for plaintiff-appellant.

John T. Hayden and Gregory R. Meyer, Littler, Mendelson, Fastiff & Tichy, San Francisco, CA, for defendant-appellee.

Before: HUG, FARRIS, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant Carpenters Pension Trust Fund for Northern California ("the Fund") is a multiemployer pension plan for the carpenters who are .represented by Carpenters 46 Northern California Counties Conference Board of the United Brotherhood of Carpenters and Joiners of America (AFL–CIO). The trustees of the Fund administer the plan pursuant to a Trust Agreement. Appellee Underground Construction Co., Inc. ("Underground") was for many years a signatory to the Trust Agreement and the relevant collective bargaining agreement, the Carpenters Master Agreement ("the CBA").

During that period, Underground participated in two joint ventures ("JV"s), each formed to build a specific project. In each case, Underground had one JV partner; Underground owned 60 percent of the first JV and 55 percent of the second. The business operations of the JVs were entirely separate from those of Underground and its JV partners. Moreover, each JV was itself a signatory to the CBA, and each contributed to the Fund under its own account number and kept its own financial records.

In June 1986, Underground withdrew from the CBA and thereby terminated its obligation to make continued contributions to the Fund, while the firm continued to work in the area covered by the CBA. The present dispute concerns the amount of Underground's resulting "withdrawal liability" to the Fund for its proportionate share of the Fund's unfunded vested liabilities. The Fund included the JVs' contribution history in its calculation of Underground's liability. Underground, supported by the rulings of an

arbitrator as well as the district court, contends that it was not liable for the additional contribution history.

For the reasons stated below, we hold that the district court did not err in ruling that including the JVs' history in the calculation of Underground's withdrawal liability requires an arbitrary interpretation of the Trust Agreement. The Fund concedes here that federal law provides no independent source of liability. As the parties had stipulated to the principal facts, there remained no disputed issues. We thus affirm the district court's grant of summary judgment for Underground.

## The Statutory Scheme

As a general matter, pension plans are federally regulated pursuant to the Employee Retirement Income Security Act ("ERISA"), 29. U.S.C. §§ 1001 et seq. (1988). The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1453 (1988), amended ERISA to allow plans to impose proportional liability on withdrawing employers for the unfunded vested benefit obligations of multiemployer plans. For a summary of the legislative history, see *Pension Benefit Guarantee Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720–25, 104 S.Ct. 2709, 2713–16, 81 L.Ed.2d 601 (1984). To the extent that past contributions did not suffice to fund obligations that had vested at the time of withdrawal, the MPPAA sought to make withdrawing employers pay their proportionate share of the deficit such that remaining employers would not be unfairly saddled with increased payments.

Ordinarily, "withdrawal" triggering this liability occurs when an employer permanently terminates its obligation to contribute or ceases all operations covered by the plan. 29 U.S.C. § 1383(a). However, in enacting the MPPAA Congress recognized the transitory nature of contracts and employment in the building and construction industry with a specific exception. Individuals in construction trades routinely work for many employers during their careers, and employers come and go; as long as the base of construction projects in the area covered by the plan is funding the plan's obligations, the plan is not threatened. H.R.Rep. No. 869, 96th Cong., 2d Sess. 75–76 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2918, 2943–44. As a result, "withdrawal" triggering an MPPAA withdrawal liability assessment upon a construction industry employer occurs only if:

(A) an employer ceases to have an obligation to contribute under the plan, and

(B) the employer—

(i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or

(ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

29 U.S.C. § 1383(b)(2) (1988). This provision aims to extract withdrawal contributions only from those employers who may threaten the plan by reducing the plan's contribution base. When disputes arise as to the amount of liability, the MPPAA mandates arbitration. 29 U.S.C. § 1401(b)(1).

## Standard of Review

On review, the arbitrator's factual findings are presumed correct, rebuttable only by a clear preponderance of the evidence. 29 U.S.C. § 1401(c). Both the district court and this court review *de novo* all conclusions of law. *CMSH Co. v. Carpenters Trust Fund*, 963 F.2d 238, 240 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 185, 121 L.Ed.2d 130 (1992); *Board of Trustees v. Thompson Bldg. Materials*, 749 F.2d 1396, 1405–06 (9th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985). Whether contract language is ambiguous is a question of law, *Aetna Casualty & Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1511 (9th Cir. 1991), and principles of contract interpretation applied to the facts are also reviewed *de novo*, *L.K. Comstock & Co., Inc. v. United Engineers & Constructors, Inc.*, 880 F.2d 219, 221 (9th Cir.1989). *But cf. Jos. Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994, 999 (7th Cir.1993) (MPPAA arbitrator's decision on mixed question of law and fact such as contract interpre-

tation reviewable only for clear error), *cert. granted in part,* —— U.S. ——, 114 S.Ct. 2736, 129 L.Ed.2d 858 (1994).

## Discussion

ERISA contains a provision specifically aimed at preventing avoidance of withdrawal assessment liabilities through the device of multilayered corporate groups under common ultimate control. *See* 29 U.S.C. § 1301(b)(1) (1988). The Fund concedes here that Underground and its JVs do not come under the ERISA common control provision and its chain of associated regulations, and that Underground is under no statutory obligation to pay a withdrawal assessment based upon any alleged common control of the JVs.[1] While it is true that the ERISA common control provision, in conjunction with the MPPAA construction industry exception for employers who completely cease operations, operates to provide an avenue of escape from withdrawal liability where a contractor adopts the JV approach as a general practice, only Congress can close this gap.

■ The Fund is left with a claim that, under the CBA and Trust Agreement to which Underground was a party, Underground was contractually liable for plan contributions for the JVs. Under this reasoning, the JVs' contribution history was an integral part of Underground's, and the Fund now merely pursues its right under ERISA to collect a withdrawal assessment based upon Underground's total contribution history from all its operations (independent *and* joint venture).

The Fund cites two Ninth Circuit cases as authority for this proposition. The first, *Board of Trustees v. H.F. Johnson, Inc.,* 830 F.2d 1009 (9th Cir.1987), addressed a situation where two individuals held 99 percent of two entities: the H.F. Johnson corporation and Lockwood Leasing, a joint venture. Johnson withdrew from a pension plan, and the plan attempted to impose personal liability on the owners through their interest in Lockwood. The owners *conceded* that the two entities met the ERISA common control test, *id.* at 1012, but argued that they could not be held personally liable for the withdrawal liability assessed against the joint venture. The court held that joint ventures were properly regarded as partnerships and that ordinary partnership liability principles rendered the individuals personally liable for assessments against the joint venture. *Id.* at 1015.

The Fund mischaracterizes *Johnson* in attempting to draw out of its holding a general principle that joint venture participants are individually liable for pension contribution history attributable to joint venture' enterprises. The joint venture participants in *Johnson* were derivatively liable for withdrawal assessments, but not because of anything related to the withdrawal assessment context. Rather, ordinary partnership liability principles rendered the individuals liable for what they conceded was a valid withdrawal assessment against the joint venture. *Johnson* merely stands for the proposition that Underground could be liable for a valid withdrawal assessment debt of the JVs themselves. Since the JVs here completely ceased operations, however, they were not subject to a withdrawal assessment in the first place. 29 U.S.C. § 1383(b)(2).

The second Ninth Circuit case upon which the Fund relies, *H.C. Elliott, Inc. v. Carpenters Pension Trust Fund,* 859 F.2d 808 (9th Cir.1988), *cert. denied,* 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 406 (1989), is similarly inapposite. In *Elliott,* a case involving the appellant, the corporation withdrew from the Fund and began subcontracting its carpentry work. The Fund imposed a withdrawal as-

---

1. Underground claims that this court's *CMSH* decision, published during the pendency of this appeal, is dispositive of the instant case. In *CMSH,* an arbitrator ruled that CMSH and a related corporation were "alter egos" such that they were jointly responsible for any withdrawal liability assessed. This court reversed, finding that the alter ego doctrine could not apply to the facts at issue; and since the two entities did not come under the common control provision of ERISA, the court continued, CMSH was not liable for the other entity's withdrawal from the plan. *CMSH,* 963 F.2d at 241. Contrary to Underground's assertion, *CMSH* does not stand for the proposition that ERISA common control is the only way for a corporation to be liable for another entity's contribution history in the calculation of a withdrawal assessment. We need not and do not here enumerate the other potential sources of such liability.

sessment, and Elliott sued. The district court held, and this court agreed, that subcontracting represented "continu[ing] to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required." 29 U.S.C. § 1383(b)(2).

This court noted, however, that "[t]he subcontracting provisions of the collective bargaining agreement to which Elliott was signatory are important for our resolution of the case," *Elliott*, 859 F.2d at 810, because they determined whether Elliott was continuing to perform the type of work for which contributions had previously been required. 29 U.S.C. § 1383(b)(2). These provisions explicitly required that signatories employ only subcontractors who agreed to comply with the CBA, that signatories were liable for delinquent contributions from subcontractors, and that signatories would bear primary responsibility for contribution payments. *Elliott*, 859 F.2d at 810. In a matter of contract interpretation, the court held that hiring subcontractors was work "covered by the agreement" between the Fund and Elliott.

The facts here are entirely distinguishable, however. *Elliott*'s holding merely indicates that if Underground had withdrawn, while continuing to operate JVs and having an express prior contractual commitment in the CBA to be liable for the JVs' pension contributions, Underground would have been liable for a withdrawal assessment based on its *own* contribution history. The arbitrator and district court here found no such express commitment on the part of Underground, and the Fund seeks to impose liability on Underground for the JVs' history as well.

The other cases cited by the Fund are surveyed along with *Elliott* in *Seaway Port Auth. v. Duluth–Superior ILA Marine Ass'n*, 920 F.2d 503 (8th Cir.1990), cert. denied, 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The *Seaway* court considered the precedents from several circuits, including the Second Circuit's "contributing obligor" test, *id.* at 508–09, and found "one fact common to all of the parties held subject to withdrawal liability: *they were contractually bound to make pension contributions* ..." *Id.* at 509 (emphasis in original).

Thus, the Fund's argument on appeal comes down to its interpretation of the CBA and the Trust Agreement. The arbitrator and district court both rejected the Fund's contention that a reasonable interpretation of these documents could render Underground accountable for its joint ventures' participation in the Fund.

Trustees' interpretations of employee benefit trust agreements receive special deference: "courts must defer to the trustees' interpretation of a trust agreement unless the interpretation is arbitrary, capricious, or contrary to law." *Board of Trustees v. California Coop. Creamery*, 877 F.2d 1415, 1420 (9th Cir.1989). The Fund submits that the Trust Agreement renders Underground liable for the contributions of its joint ventures, while the district court specifically found the Fund's interpretation to be arbitrary. The crucial provision reads in full:

> Neither the Employers nor any Signatory Association, nor any officer, agent, employee or committee member of the Employers or any Signatory Association shall be liable to make Contributions to the Fund or be under any other liability to the Fund with respect to the Pension Plan, except to the extent that he or it may be an Individual Employer required to make Contributions to the Fund with respect to his or its own individual or joint venture operations or to the extent he may incur liability as a Trustee as hereinafter provided. *The liability of any Individual Employer to the Fund, or with respect to the Pension Plan, shall be limited to the payments required by the Collective Bargaining Agreements with respect to his or its individual or joint venture operation and in no event shall he or it be liable or responsible for any portion of the Contributions due from other Individual Employers with respect to the operations of such Individual Employers.* The basis on which payments are made to the Fund shall be as specified in the Collective Bargaining Agreements, in Subscriber Agreements and in this Trust Agreement and the Individual Employers shall not be required to make any further payments or contributions to the cost of operation of the Fund or of the Plan, ex-

cept as may be provided in such Agreements. The plan is and has been at all times a defined contribution plan.

Trust Agreement, art. II, § 7 (emphasis added).

Because the JVs were themselves "individual employers" bound by the CBA and the Trust Agreement, we agree with the district court that the Fund's preferred interpretation of the Trust Agreement is indeed arbitrary. The CBA provides no independent source of liability. With no remaining genuine dispute, the district court did not err in granting summary judgment for Underground.

## Attorney's Fees

Both parties contend that they are entitled to attorney's fees on appeal pursuant to 29 U.S.C. § 1451(e) (1988). The balance in this case does not suggest that an award of attorney's fees under § 1451(e) is appropriate. *See Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 774–75 (9th Cir.1989); *Cuyamaca Meats, Inc. v. San Diego & Imperial Counties Butchers' & Food Employers' Pension Trust Fund*, 827 F.2d 491, 500 (9th Cir.1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988); *Hummel v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980).

**AFFIRMED.**