23-647-cv
*Dycom Indus., Inc. v. Pension, Hosp'n & Benefit Plan of the Elec. Indus.*

# United States Court of Appeals
## for the Second Circuit

August Term 2023

(Argued: March 18, 2024          Decided:   April 15, 2024)

Docket No. 23-647-cv

———————————————————————

Dycom Industries, Inc.,
*Plaintiff-Appellant*,

v.

Pension, Hospitalization & Benefit
Plan of the Electrical Industry,
*Defendant-Appellee*.

─────────────────────────────

Appeal from the United States District Court
for the Southern District of New York
No. 22-cv-3303, Paul A. Engelmayer, *Judge*.

─────────────────────────────

Before:       SACK, BIANCO and PARK, *Circuit Judges*.

        In this appeal, the Dycom Industries, Inc. ("Dycom") challenges the District Court's judgment confirming an arbitration award, which assessed withdrawal liability against Dycom based on the arbitrator's determination that its predecessor-in-interest was not operating in the building and construction industry, and thus was not exempt from withdrawal liability under Section 4203(b) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1383(b).  We conclude that the cable installation services at issue in this

appeal did not involve work in the "building and construction industry" under Section 1383(b).  AFFIRMED.

ERIC FIELD (Lawrence Levien, *on the brief*), Littler Mendelson, P.C., Washington, District of Columbia *for Plaintiff-Appellant*.

JAMES EMMET MURPHY (Charles R. Virginia III, *on the brief*), Virginia & Ambinder, LLP, New York, New York *for Defendant-Appellee*.

PER CURIAM:

Plaintiff-Appellant Dycom Industries, Inc. ("Dycom") appeals from the district court's judgment confirming an arbitration award, which assessed withdrawal liability against Dycom based on the arbitrator's determination that Dycom's predecessor-in-interest, Midtown Express, LLC ("Midtown"), was not operating in the building and construction industry, and thus was not exempt from withdrawal liability under Section 4203(b) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1383(b).  For the reasons stated below, we affirm.

## BACKGROUND

Midtown was a cable contractor that performed work involving the installation, servicing, and disconnection of telecommunications cables necessary to provide cable television, internet, and telephone services exclusively to

2

customers of Time Warner Cable Company in New York City and Bergen County, New Jersey. Midtown entered into collective bargaining agreements ("CBAs") with non-party Local Union No. 3 of the International Brotherhood of Electrical Workers ("Local 3"), which required Midtown to contribute to the Pension, Hospitalization & Benefit Plan of the Electrical Industry (the "Fund"), a multiemployer pension plan under ERISA. *See* 29 U.S.C. §§ 1001 *et seq.*, *amended by* the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1461.

In April 2016, Midtown notified Local 3 that it was permanently shutting down its operations and ceased contributions to the Fund after July 12, 2016. The Fund notified Midtown that its dissolution constituted a complete withdrawal from the Fund and assessed Midtown's (and its successor, Dycom's) withdrawal liability under 29 U.S.C. § 1381.[1] Midtown demanded arbitration, arguing that substantially all its employees were performing work in the building and

---

[1] "A 'complete withdrawal' . . . occurs when an employer . . . 'permanently ceases all covered operations under the plan,' for example by going out of business, or renegotiating the terms of its CBA." *N.Y. State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 170–71 (2d Cir. 2022) (quoting 29 U.S.C. § 1383(a)).

construction industry, and thus it is subject to an exemption from withdrawal liability under 29 U.S.C. § 1383(b).

The arbitrator determined that Midtown did not qualify for the exemption. In particular, the arbitrator concluded that Midtown's employees "worked almost exclusively in existing buildings that were prewired for their purposes" and were generally not required to make "any repairs and/or alterations to an existing building or other structures." Special App'x at 58. The arbitrator credited testimony of former Midtown employees that about sixty to seventy percent of Midtown's work consisted of "reconnections," which involved installing a cable box onto premises that were already wired for cable. Around twenty to thirty percent of the work consisted of cable "upgrades," which occasionally involved drilling holes and running of wires, requiring nailing or stapling along a wall but never "beyond a wall." Special App'x at 58. About ten percent or less involved "new connections," which also largely required laying wires along walls to create connections in pre-wired buildings. The arbitrator also found, based on the testimony of Midtown's Vice President of Operations, that "most of the residential buildings upon which Midtown worked were already wired for cable" and that, "if the cable was already installed and the signal to the building was working, the

4

technician would not need to drill any holes into the building to run cable." Special App'x at 38. In short, based on these factual findings, the arbitrator concluded that Midtown employees did not perform work in the building and construction industry.

Dycom then filed this lawsuit to vacate the arbitrator's award, and the Fund filed a cross-motion to confirm the award. The magistrate judge (Stewart D. Aaron, *M.J.*) issued a report and recommendation ("R&R"), which "agree[d] with [the arbitrator's] conclusion that '[t]here is no doubt' that Midtown's warehousemen, dispatchers and data entry employees were not working in the building and construction industry." *Dycom Indus., Inc. v. Pension, Hosp'n & Benefit Plan of Elec. Indus.*, No. 22-cv-3303 (PAE) (SDA), 2022 WL 19406560, at \*5 (S.D.N.Y. Dec. 27, 2022). The R&R further found that "Midtown's installers (also referred to as technicians) were not engaged in the building and construction industry." *Id*. In particular, the R&R explained that "drilling holes and running cable through existing buildings or structures, and then using material and parts to hook up the cable to the necessary equipment in order to provide cable, television, Wi-Fi and

5

home security services is not within the ambit of work performed in the 'building and construction industry' under [Section 1383]." *Id*. (record citation omitted).

The district court, over Dycom's objections, adopted the R&R issued by the magistrate judge, denied Dycom's motion to vacate the award, and granted the Fund's cross-motion to confirm the award. *Dycom Indus., Inc. v. Pension, Hosp'n & Benefit Plan of Elec. Indus.*, No. 22-cv-3303 (PAE) (SDA), 2023 WL 2625811, at *4 (S.D.N.Y. Mar. 24, 2023).

Dycom appealed.

## DISCUSSION

We review *de novo* an arbitrator's determination that a party does not qualify for an exemption from withdrawal liability under ERISA. *See HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 160 (2d Cir. 2012). "By contrast, factual findings made by an arbitrator enjoy a presumption of correctness." *Nat'l Ret. Fund v. Metz Culinary Mgmt., Inc.*, 946 F.3d 146, 149 (2d Cir. 2020) (internal quotation marks omitted) (citing 29 U.S.C. § 1401(c) ("[T]here shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct.")). We recognize that the same rules of construction apply to an exemption, such as Section 1383(b), as to

6

ERISA's other provisions. *See BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1539 (2021) ("Exceptions and exemptions are no less part of Congress's work than its rules and standards—and all are worthy of a court's respect."). In assessing whether withdrawal liability applies to Midtown, "it is our responsibility to make sure the legislative tests for permitting the avoidance of withdrawal have [or have not] been satisfied, not to determine whether extraneous considerations could lead to a different conclusion." *Bowers v. Andrew Weir Shipping, Ltd.*, 27 F.3d 800, 806 (2d Cir. 1994).

On appeal, Dycom does not challenge the arbitrator's factual findings. Thus, the sole legal question presented is whether the arbitrator erred in finding that Midtown was not operating in the business and construction industry as contemplated by Section 1383(b), which would afford Dycom, as Midtown's successor-in-interest, an exemption from withdrawal liability. The exemption applies only if "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry." 29 U.S.C. § 1383(b)(1)(A). We conclude that the arbitrator correctly determined that the work performed by Midtown was not work within

7

the building and construction industry under Section 1383(b) and, thus, the exemption did not apply.[2]

Although the phrase "building and construction industry" is not defined in ERISA, the parties agree that we should utilize the definition articulated by the National Labor Relations Board ("NLRB") for the purposes of the Taft-Hartley Act, 29 U.S.C. § 158(f), in *Carpet, Linoleum and Soft Tile Local Union No. 1247 ("Indio Paint")*, 156 N.L.R.B. 951, 959 (1966).[3] In *Indio Paint*, the NLRB considered the common usage of the verbs "build" and "construct" as well as "technical industrial parlance." *Id.* at 957–59. The NLRB noted that in "common parlance," the word construction was defined as "[t]he act of putting parts together to form a complete and integrated object." *Id.* at 958 (emphasis omitted) (quoting Webster's Third New International Dictionary). The NLRB imported a "technical" definition from materials published jointly by the U.S. Departments of Commerce

---

[2] In light of the conclusion that Midtown did not perform work in the building and construction industry, we need not address whether "substantially all" of Midtown's employees under the plan were involved in such work. 29 U.S.C. § 1383(b)(1)(A).

[3] Under the Taft-Hartley Act, "construction industry" work is that "relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work." 29 U.S.C. § 158(e). The provision relating to the "building and construction industry" in 29 U.S.C. § 158(f) contains no definition of that term; however, in order to avail themselves of the provisions of Section 158(f), employers must be "engaged primarily in the building and construction industry." 29 U.S.C. § 158(f).

and Labor that "[c]onstruction covers the erection, maintenance and repair (including replacement of integral parts), of immobile structures and utilities[.]" *Id*. at 957. "It includes structural additions and alterations" that, "when installed, become an integral part of the structure and are necessary to any *general* use of the structure," such as "plumbing, heating, air-conditioning and lighting equipment." *Id*. at 957–58. However, "construction does not include the procurement of special purpose equipment designed to prepare the structure for a *specific* use." *Id*. at 958. Based upon these definitions, which the NLRB also noted had been utilized by various courts, the NLRB found that the "building and construction industry," for purposes of the Taft-Hartley Act, involves "the provision of labor whereby materials and constituent parts may be combined on the building site to form, make or build a structure." *Id*. at 959 (emphasis omitted).

Applying the *Indio Paint* definition here, the arbitrator correctly determined that Midtown did not perform work in the building and construction industry. The arbitrator found that "Midtown almost never worked on new construction projects" but rather "provided cable service for homes or apartment houses that were prewired for that service." Special App'x at 56. In that capacity, Midtown's employees were involved in reconnects, new connections, and upgrades, which

9

"generally did not require any repairs and/or alterations to an existing building or other structures." Special App'x at 58. For reconnects, "[t]he technician just needed to put in a cable box and make sure a signal was going through" and only had to do wiring in a small percentage of jobs. Special App'x at 58. Similarly, new connections were "not very complicated because most of these assignments were in structures where the wiring was already in place," and "[t]he technicians were not even required to make a hole in a wall for most jobs," but rather "generally placed [the wire] along a wall and not into a wall." Special App'x at 58. Finally, upgrades would involve "drill[ing] a hole occasionally," and on less than half of jobs, running wire along the wall and nailing or stapling it down. Special App'x at 58. Based on these factual findings, the arbitrator correctly concluded that Midtown's work did not involve using materials to "form, make or build a structure," *Indio Paint*, 156 N.L.R.B. at 959, nor did it involve "structural additions and alterations," *id*. at 957; *see also* 29 U.S.C. § 158(e), *supra* note 3.

Our analysis is consistent with the NLRB's decision in *Adderley Industries, Inc. & Local 1448, International Brotherhood of Electrical Workers*, No. 4-CA-23435, 1996 WL 33321485 (N.L.R.B. Div. of Judges Oct. 2, 1996), in which the NLRB held that cable installation was not work in the building and construction industry for

purposes of the Taft-Hartley Act. In doing so, the NLRB distinguished installation from "pre-wiring" or "going into a building that's under construction and running the wires before the walls are up," which "at least arguably constitutes work in the building and construction industry" for the purposes of the Act. *Id.* Here, as noted above, Midtown almost never worked on new construction projects, and there was no evidence of its employees' involvement with pre-wiring or installing materials that would "form, make or build a structure." *Indio Paint*, 156 N.L.R.B. at 959. Thus, consistent with the analysis in *Adderley*, Midtown's cable installation did not involve work in the "building and construction industry" under Section 1383(b).

Dycom argues that, because the NLRB in *Indio Paint* also looked to the Standard Industrial Classification Manual, published in 1957, for technical usage, we should reference the modern-day version of this resource, now called the North American Industrial Classification System ("NAICS"). The NAICS, a joint publication of the United States, Mexico, and Canada, is a "system of classification of economic activities that makes the industrial statistics produced in the three countries comparable." NAICS, United States, Executive Office of the President, Office of Management and Budget, 1 (2022). The NAICS classifies several categories of cable installation contractors (*e.g.*, communications equipment

11

installation-contractors, alarm installation-contractors, and cable television hookup-contractors) as specialty contractors in the construction industry. *Id*. at 132. Although the NLRB in *Indio Point* referred to the predecessor version of the NAICS, that reference was in conjunction with other technical sources and common usage to obtain a "consensus" about the definition of the building and construction industry. 156 N.L.R.B. at 959. We find this non-labor law source, which classifies economic activities for statistical purposes completely unrelated to the purpose of the exemption at issue here, not to be dispositive as to the scope of the building and construction exemption under Section 1383(b).[4] In sum, we are not persuaded that the recent sources Dycom cites should be used to expand the definition established in *Indio Paint* for purposes of Section 1383(b), and we

---

[4] We also decline to utilize the updated regulations issued by the Department of Labor under the Davis-Bacon Act, which regulate the wages owed for work performed on federal construction contracts, in part "to modernize the definition of the terms 'building or work'" to include broadband installation, as well as certain energy infrastructure projects. Updating the Davis-Bacon and Related Acts Regulations, 88 Fed. Reg. 57526, 57597 (Aug. 23, 2023). To the extent the broad definition utilized by the Department of Labor under the Davis-Bacon Act supports Dycom's position, we find that it provides insufficient basis to override the definition articulated by the NLRB in *Indio Paint* and applied in *Adderley*.

conclude that under that definition, Midtown's work did not qualify for the exemption.

## CONCLUSION

We have considered Dycom's remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court.