**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

WALKER SPECIALTY
CONSTRUCTION, INC.,

*Plaintiff - Appellee,*

v.

BOARD OF TRUSTEES OF THE
CONSTRUCTION INDUSTRY
AND LABORERS JOINT PENSION
TRUST FOR SOUTHERN
NEVADA; THE CONSTRUCTION
INDUSTRY AND LABORERS
PENSION TRUST FOR
SOUTHERN NEVADA,

*Defendants - Appellants.*

No. 24-1560

D.C. No.
2:23-cv-00281-
APG-MDC

OPINION

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted March 5, 2025
Las Vegas, Nevada

Filed January 5, 2026

Before: Johnnie B. Rawlinson, Eric D. Miller, and Roopali
H. Desai, Circuit Judges.

Opinion by Judge Desai

## SUMMARY[*]

### Multiemployer Pension Plan Amendments Act

The panel affirmed the district court's grant of summary
judgment in favor of Walker Specialty Construction, Inc., in
Walker's action against the Board of Trustees of the
Construction Industry and Laborers Joint Pension Trust,
contesting withdrawal liability under the Multiemployer
Pension Plan Amendments Act, an amendment to the
Employee Retirement Income Security Act that imposes
liability on employers that withdraw from multiemployer
pension plans.

The panel held that Walker was exempt from withdrawal
liability under the MPPAA because its asbestos abatement
work qualified it for the "building and construction industry"
exception to liability. The panel concluded that, as the
agency tasked with enforcing the Labor Management
Relations Act, the only other statute in which Congress had
previously used the term "building and construction
industry," the National Labor Relations Board established a
settled meaning for the term to include not only the erection
of new buildings, but also maintenance, repair, and

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

alterations that are essential to a building or structure's usability. The panel inferred that Congress's intent to incorporate the NLRB's definition into the MPPA was plain from its use of the same language in both statutes. The panel concluded that, under the NLRB's comprehensive definition, Walker's asbestos abatement work was within the building and construction industry, and it therefore qualified for the liability exemption.

## COUNSEL

Ryan C. Curtis (argued) and David L. Sieck, Fennemore Craig PC, Phoenix, Arizona, for Plaintiff-Appellee.

Adam P. Segal (argued), Christopher M. Humes, and William D. Nobriga, Brownstein Hyatt Farber Schreck LLP, Las Vegas, Nevada, for Defendants-Appellants.

Andrew J. Martone, Martone Legal LLC, Creve Coeur, Missouri, for Amicus Curiae the Association of General Contractors of America.

## OPINION

DESAI, Circuit Judge:

Walker Specialty Construction, Inc. ("Walker") sued the Board of Trustees of the Construction Industry and Laborers Joint Pension Trust ("Trust") to contest withdrawal liability under the Multiemployer Pension Plan Amendments Act ("MPPAA"). Walker claims that it qualifies for the "building and construction industry" exception and is thus exempt from liability. The district court granted summary judgment in favor of Walker, and the Trust appealed. We hold that Walker's asbestos abatement work is performed in the "building and construction industry" under the MPPAA, and thus we affirm.

## BACKGROUND

The MPPAA, which amended the Employee Retirement Income Security Act ("ERISA"), imposes liability on employers that withdraw from multiemployer pension plans. 29 U.S.C. § 1381(a). Employers can avoid withdrawal liability if they qualify for an exception available to employers operating in the "building and construction industry." 29 U.S.C. § 1383(b). But the MPPAA does not define the term "building and construction industry." *See id.* To resolve this appeal, we must determine the meaning of "building and construction industry" under the MPPAA and decide whether Walker's employees worked in the industry.

Walker's employees performed asbestos abatement and demolition work in southern Nevada. Asbestos abatement involves the remediation of building materials containing asbestos, such as insulation, roofing, flooring, walls, cement piping, and fireproofing materials. Remediation requires

removing asbestos-containing materials or covering them with an impermeable coating like polyethylene to prevent the release of asbestos fibers. To remove materials with asbestos, Walker's employees scrape or grind them off, break them down using chemical solvents, or demolish them. Removal of asbestos-containing materials, especially demolition, can facilitate the refurbishment and renovation of existing buildings and the construction of new buildings.

The Trust administers a multiemployer pension benefit plan that primarily covers "building and construction industry" employees in southern Nevada. Walker contributed to the Trust's plan for its employees until 2019, when Walker stopped operating in the state and ceased contributing to the plan.

The Trust sent Walker a letter in 2021 claiming that Walker owed $2,837,953 in withdrawal liability based on its 2019 withdrawal. Walker requested review of the Trust's claim, arguing that it is exempt from withdrawal liability under the MPPAA's "building and construction industry" exception. While review was pending, Walker made quarterly payments on the disputed liability, as required under ERISA. The Trust reaffirmed its assessment of withdrawal liability, stating that building and construction involves "forming, making or building a structure," and asbestos abatement does not qualify because it involves "tearing down structures rather than building or making them."

Walker initiated arbitration, and both parties moved for summary judgment on Walker's claim for relief under the exception. The arbitrator granted judgment in favor of the Trust, holding that "work in the construction industry" is "the provision of labor whereby materials and constituent

parts may be combined on the building site to form, make or build a structure" and that Walker's work "does not fit within that definition."

Walker sued the Trust in the district court to contest withdrawal liability and vacate or modify the arbitration award on the basis that Walker qualifies for the "building and construction industry" exception. Both parties again moved for summary judgment. The district court rejected the Trust's understanding of "building and construction industry" as the "literal erecting of structures." Rather, it adopted a more expansive understanding of "building and construction industry," which includes the erection, maintenance, repair, and alteration of buildings and structures. The district court held that Walker's asbestos abatement work qualified as work in the "building and construction industry" because it involved "alteration, demolition, repair, or improvement of fixed structures in buildings." The district court granted summary judgment to Walker and ordered the Trust to return Walker's partial payments with interest. The Trust timely appealed.

## STANDARD OF REVIEW

"We review de novo the district court's grant of summary judgment." *Penn Cent. Corp. v. W. Conf. of Teamsters Pension Tr. Fund*, 75 F.3d 529, 533 (9th Cir. 1996). We also review de novo questions of law, including questions of statutory interpretation. *Trs. of Amalgamated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926, 929 (9th Cir. 1986). "Whether a withdrawal within the meaning of the statute has occurred presents a mixed question of law and fact," *Penn Cent.*, 75 F.3d at 533, which we review de novo, *Carpenters Pension Tr. Fund for N. Cal. v. Underground Const. Co.*, 31 F.3d 776, 778 (9th Cir. 1994); *Resilient Floor*

*Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1088 (9th Cir. 2015).

## ANALYSIS

When first enacted, ERISA "did not adequately protect multiemployer pension plans from the adverse consequences that resulted when individual employers terminated their participation in, or withdrew from, multiemployer plans." *Resilient Floor*, 801 F.3d at 1088 (cleaned up). "[A] significant number of multiemployer plans were experiencing extreme financial hardship as a result of individual employer withdrawals from the plans, which saddled the remaining employers with increased funding obligations." *Id.* (cleaned up).

In 1980, Congress enacted the MPPAA to address this problem. *H.C. Elliott, Inc. v. Carpenters Pension Tr. Fund for N. Cal.*, 859 F.2d 808, 810 (9th Cir. 1988). Under the MPPAA revisions to ERISA, when an employer withdraws from a multiemployer pension plan, it is liable for its share of the plan's unfunded vested benefits. *Resilient Floor*, 801 F.3d at 1089 (citing 29 U.S.C. § 1381). Generally, an employer that "permanently ceases" its work in the plan's jurisdiction has withdrawn and owes withdrawal liability. 29 U.S.C. § 1383(a).

But the MPPAA contains a "building and construction industry" exception to withdrawal liability. This exception exempts an employer from paying withdrawal liability if (1) substantially all the employees for whom the employer contributes to the multiemployer pension plan work in the "building and construction industry;" (2) the plan primarily covers employees in the "building and construction industry;" and (3) the employer ceases work in the

jurisdiction and does not resume such work within five years. 29 U.S.C. § 1383(b).

Congress created this exception because of "the transitory nature of contracts and employment in the building and construction industry." *Carpenters Pension Tr. Fund*, 31 F.3d at 778. "[T]he construction industry as a whole does not necessarily shrink when a contributing contractor leaves the industry; employees are often dispatched to another . . . contractor" in the area that contributes to the multiemployer pension plan on their behalf. *H.C. Elliott*, 859 F.2d at 811. Thus, "as long as the base of construction projects in the area covered by the plan is funding the plan's obligations, the plan is not threatened" when an individual employer withdraws. *Carpenters Pension Tr. Fund*, 31 F.3d at 778.

Here, the parties agree that the Trust's plan primarily covers employees in the "building and construction industry" and that Walker ceased work in the jurisdiction and did not resume within five years. The parties also agree that substantially all of Walker's employees perform asbestos abatement. Thus, the sole issue on appeal is whether asbestos abatement qualifies as work in the "building and construction industry." The Trust argues that the term is narrow and only relates to the building of structures, which does not include asbestos abatement. Walker argues that the term is more inclusive and includes alterations and repairs for asbestos abatement.

The MPPAA does not define "building and construction industry," and neither the Supreme Court nor this court has interpreted it as used in the MPPAA. Interpreting this statutory term as an issue of first impression, "we look first to the plain meaning of the language in question." *S & M Inv.*

*Co. v. Tahoe Reg'l Plan. Agency*, 911 F.2d 324, 326 (9th Cir. 1990). "If the term at issue has a settled meaning, we must infer that the legislature meant to incorporate the established meaning, unless the statute dictates otherwise." *Id.* At the time of the MPPAA's enactment, Congress had used the term "building and construction industry" in only one other statute. As the agency tasked with enforcing that statute, the National Labor Relations Board ("NLRB") had given the term a comprehensive definition. Because the NLRB established a settled meaning for the term "building and construction industry," we must infer that Congress incorporated the NLRB's definition of "building and construction industry" into the MPPAA.

### A. The NLRB previously defined "building and construction industry" to include work involving the erection, maintenance, repair, and alteration of buildings and structures.

Before the MPPAA was enacted, the only statute in which Congress used the exact term "building and construction industry" was the Labor Management Relations Act of 1947, also known as the Taft-Hartley Act ("Taft-Hartley"), which regulates unfair labor practices. *See* 29 U.S.C. § 141. Like the MPPAA, Taft-Hartley contains an exception for employers in the "building and construction industry." 29 U.S.C. § 158(f). The exception allows such employers to enter into prehire agreements—collective-bargaining agreements established prior to hiring any employees—which are otherwise prohibited. *Id.*; *Bldg. & Constr. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 230 (1993).

The NLRB settled the meaning of the "building and construction industry" through a series of administrative decisions interpreting Taft-Hartley in the 1960s. In *Indio Paint*, the NLRB surveyed contemporaneous sources—including technical publications and manuals, common dictionaries, and state codes and decisions—to determine that the "building and construction industry" includes "the provision of labor whereby materials and constituent parts may be combined on the building site to form, make or build a structure." *Carpet, Linoleum and Soft Tile Local Union No. 1247 (Indio Paint & Rug Ctr.)*, 156 N.L.R.B. 951, 959 (1966) (emphasis omitted). Moreover, "[c]onstruction covers the erection, maintenance and repair . . . of immobile structures and utilities . . . which become integral parts of structures and are essential to their use for any general purpose." *Id.* at 957 (emphasis omitted). The NLRB similarly noted that "construction" includes "new work, additions, alterations, and repairs." *Id.* at 958.

The NLRB reaffirmed that the "building and construction industry" includes the alteration and demolition of buildings in *Zidell Explorations, Inc.* 175 N.L.R.B. 887 (1969). The employer in *Zidell* both built and dismantled buildings and structures. *Id.* at 889. Indeed, the relevant project in that case involved dismantling a ballistic missile complex. *Id.* at 888. Because "[i]ts work on th[e] job was in all characteristics identical to that performed in the construction industry," the NLRB held that the employer "was engaged in the building and construction industry within the meaning of" Taft-Hartley. *Id.* at 888–89.

Thus, for over a decade before the MPPAA, the term "building and construction industry" had a settled meaning under Taft-Hartley. The NLRB defined the term to include not only the erection of new buildings, but also maintenance,

repair, and alterations that are essential to the buildings' usability.

The Trust urges us to consider only the "form, make, or build" part of the definition and argues that the NLRB thus included *only* work putting together materials to build something new. Not so. While *Indio Paint* stated that construction involves erecting new structures, the NLRB did not exclude alterations, maintenance, and repairs from its definition. And, to the extent the NLRB excluded certain work from the "building and construction industry," it was referring to off-site construction work. *See Indio Paint*, 156 N.L.R.B. at 959 ("Congress did not intend to include in the exemption those employers who manufacture and assemble products *which are subsequently installed by others* at the construction site.").

Two of our sister circuits similarly rely on the NLRB's expansive interpretation of "building and construction industry" to include repairs and alterations under the MPPAA exception. The Eighth Circuit has held that a company that supplied oils and asphalt materials to contractors working on road construction and repair was not in the "building and construction industry" because it "was merely a supplier" and "sold a product that another company refined, and still others applied or used." *Union Asphalts & Roadoils, Inc. v. MO-KAN Teamsters Pension Fund*, 857 F.2d 1230, 1232, 1235 (8th Cir. 1988). But the Eighth Circuit explained that road repair *would* be construction work. *See id.* at 1235 (holding that the company did not perform construction work because its employees "did not engage in spreading road oil or asphalt on any highway or in any other way engage in actual road construction or repair"). And it noted that a surveying company, too, would qualify for the exception if most of the company's work were done

on-site at construction projects, even though surveyors are not involved in the actual erection of structures. *See id.* (citing *Operating Eng'rs Pension Tr. v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 562–64 (9th Cir. 1984) (finding that construction-related surveying work was in the "building and construction industry" under Taft-Hartley)).

The Second Circuit has similarly stated that the NLRB's definition of the "building and construction industry" includes "using materials to 'form, make or build a structure'" *and* "structural additions and alterations." *Dycom Indus., Inc. v. Pension, Hospitalization & Benefit Plan of the Elec. Indus.*, 98 F.4th 397, 401 (2d Cir. 2024) (per curiam) (quoting *Indio Paint*, 156 N.L.R.B. at 957–59). In *Dycom*, the Second Circuit found that a company providing cable service for buildings, which were prewired for the service, was not "in the building and construction industry" because its work did not involve repairs or alterations. *Id.* The company's employees "only had to do wiring in a small percentage of jobs" and "were not even required to make a hole in a wall for most jobs." *Id.* The Second Circuit suggested that, while such surface-level work does not qualify for the exception, alterations that affect the structure of buildings would qualify for the exception. *Id.*

### B. We presume that Congress incorporated the NLRB's definition of "building and construction industry" into the MPPAA.

Because the term "building and construction industry" had a settled meaning prior to the MPPAA's enactment, we infer that Congress was aware of and intended to incorporate this definition when it enacted the "building and construction industry" exception in the MPPAA. *See S & M*, 911 F.2d at

326; *see also Comm'r of Internal Revenue v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993) (holding that a statutory phrase "had acquired a settled judicial and administrative interpretation," of which "Congress presumptively was aware," and thus "it is proper to accept the already settled meaning of the phrase"); *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 116–17 (2002) ("This background law . . . points to tacit congressional approval of the EEOC's position, Congress being presumed to have known of this settled judicial treatment [of the statutory language] when it enacted and later amended Title VII."). And notably, Congress used the same term in both statutes without disclaiming or narrowing the NLRB's settled definition of "building and construction industry" when incorporating the term in the MPPAA. Congress's straightforward adoption of this preexisting term in the MPPAA is evidence that it intended "building and construction industry" to have the same meaning.[1]

We thus adopt the NLRB's interpretation of "building and construction industry" to determine the term's meaning under the MPPAA. Here, work in the "building and construction industry" includes the erection, maintenance, repair, and alterations that are essential to a building or structure's usability.

The Trust makes several arguments against using the NLRB's comprehensive definition, all of which are

---

[1] Because the plain language of the statute is clear, we do not look beyond it to the MPPAA's legislative history. *S & M*, 911 F.2d at 327. But in any event, the legislative history also supports our interpretation. A congressional committee report about the MPPAA noted that it intended for the term to "be given the same meaning as has developed in administration of the Taft-Hartley Act." H.R. Rep. No. 96-869, pt. 1, at 76 (1980).

unavailing. First, it argues that we should adopt the definition of "building and construction industry" used by other circuits, rather than the NLRB's definition, to ensure national uniformity. But our sister circuits have taken the same approach as we do here and looked at the NLRB's definition to interpret the MPPAA. *See Dycom*, 98 F.4th at 400 ("Although the phrase 'building and construction industry' is not defined in ERISA, the parties agree that we should utilize the definition articulated by the [NLRB] for the purposes of the Taft-Hartley Act."); *MO-KAN*, 857 F.2d at 1234 ("[W]e look to case law under section 8(f) of the Taft-Hartley Act, 29 U.S.C. § 158(f), which contains the same term [as the MPPAA].").

Second, the Trust argues that we should not use the NLRB's definition of "building and construction industry" because Taft-Hartley is a different law covering a different subject area than the MPPAA. But both statutes regulate the employment relationship, and Congress used the same term in both statutes for the same reason: the uniquely transient nature of the building and construction industry. Much like the MPPAA exception, Congress enacted the Taft-Hartley "building and construction industry" exception to prehire agreements because of "the short-term nature of employment [in the construction industry] which makes posthire collective bargaining difficult, the contractor's need for predictable costs and a steady supply of skilled labor, and a long-standing custom of prehire bargaining in the industry." *Associated Builders*, 507 U.S. at 231. Although Taft-Hartley addresses labor practices and the MPPAA addresses pension plans, it is appropriate to use the same definition of "building and construction industry" under both statutes because Congress enacted the exceptions based on

the transient nature of the construction industry in both contexts.

Third, the Trust argues that despite referencing Taft-Hartley in other parts of ERISA, Congress did not include a Taft-Hartley cross-reference in this exception, indicating that Congress did not intend to use the NLRB's definition of "building and construction industry." The MPPAA expressly references and incorporates several other terms from Taft-Hartley. *See* 29 U.S.C. § 1002(1) (defining "welfare plan" under ERISA to mean any plan maintained for the purpose of providing its participants with any benefit described in § 186(c) of Taft-Hartley), 1002(12) (defining "industry or activity affecting commerce" as the same term under Taft-Hartley). But a cross-reference is not required, and its absence does not defeat the presumption that Congress intended to incorporate the NLRB's definition of "building and construction industry" into the MPPAA. Again, the use of identical language in both statutes indicates that the definition of the term should be the same under the MPPAA and Taft-Hartley. *See Comm'r of Internal Revenue*, 508 U.S. at 159; *see also Shinseki v. Sanders*, 556 U.S. 396, 406–07 (2009).

Fourth, the Trust argues that the Supreme Court's decision in *Loper Bright Enters. v. Raimondo* establishes that the NLRB's interpretation does not bind this court. 603 U.S. 369 (2024). *Loper Bright* overturned *Chevron* deference, but it did not overturn the tools of statutory interpretation we apply here. *See id.* at 412. We do not defer to the NLRB's interpretation of the phrase "building and construction industry" under *Chevron*. To the contrary, we hold that Congress's intent to incorporate the NLRB's definition of the term into the MPPAA is plain from its use of the same language in both statutes.

Fifth, the Trust emphasizes that the term "building and construction industry" should be construed narrowly because it is part of a statutory exception. *See Resilient Floor*, 801 F.3d at 1094 (describing the exception as narrow). But because we infer that Congress incorporated the NLRB's interpretation of the term into the MPAA, we cannot define the term more narrowly than Congress intended.

Finally, the Trust argues that even if we were to adopt the NLRB's definition as articulated in *Indio Paint*, that definition would be limited to literally forming, making, or building a structure. But as we have already explained, *Indio Paint* provided a comprehensive definition of the "building and construction industry" that included alterations, maintenance, and repairs. *See* 156 N.L.R.B. at 957–58. We therefore adopt the NLRB's expansive understanding of the "building and construction industry."

### C. Asbestos abatement is work in the "building and construction industry" because it involves structural alterations and repairs.

Turning to the facts at hand, we must now determine whether Walker's asbestos abatement work falls within the NLRB's definition of the "building and construction industry." We conclude that asbestos abatement is work within the "building and construction industry" because it involves the "maintenance and repair . . . of immobile structures . . . which become integral parts of structures and are essential to their use for any general purpose." *See Indio Paint*, 156 N.L.R.B. at 957.

By removing asbestos from building walls, roofs, and floors, Walker repairs integral parts of buildings and ensures

that the buildings are usable without any hazard to occupants' health. Walker's abatement work requires substantial alterations to buildings—it is not merely scraping surfaces, as the Trust argues. For instance, Walker's asbestos abatement involves "demolishing [asbestos-containing] material such as drywall" and roofing, and "seal[ing] off" areas around asbestos using polyethylene. Walker's employees remove walls, ceiling, and "interior finishes such as carpets, wall coverings etc." to facilitate asbestos removal and enable remodeling, refurbishing, or complete demolition of buildings. Indeed, Walker's asbestos abatement work is virtually indistinguishable from the demolition work in *Zidell*, which the NLRB concluded to be part of the "building and construction industry" under its well-settled definition of the term. *See* 175 N.L.R.B. at 888. Thus, Walker's asbestos abatement is part of the "building and construction industry" under the MPPAA.

## CONCLUSION

For the foregoing reasons, we hold that "building and construction industry" under the MPPAA incorporates the NLRB's established definition of the term and thus includes Walker's asbestos abatement work. Because substantially all of Walker's employees worked in the "building and construction industry," Walker qualifies for the exception to withdrawal liability and was thus entitled to summary judgment.

**AFFIRMED.**